UNITED STATES of America, Plaintiff–Appellee,

v.

Tony A. SONAGERE (93–3811); Gregory George (93–3879), Defendants–Appellants.

Nos. 93–3811, 93–3879.

United States Court of Appeals, Sixth Circuit.

Submitted June 16, 1994.

Decided July 19, 1994.

Nancy L. Kelley, Office of U.S. Atty., Cleveland, OH (briefed), for U.S.

Peter T. Cahoon, Baker, Chapman & Cahoon, Akron, OH (briefed), for Tony A. Sonagere.

Lawrence R. Smith, Smith, Hanna, Altwies, Adgate & Edminister, Akron, OH (briefed), for Gregory S. George.

Before: MERRITT, Chief Judge; and GUY and NORRIS, Circuit Judges.

GUY, Circuit Judge, delivered the opinion of the court, in which NORRIS, Circuit Judge, joined. MERRITT, Chief Judge (pp. 54–55), delivered a separate dissenting opinion.

RALPH B. GUY, JR., Circuit Judge.

Defendant Tony Sonagere entered a conditional guilty plea to manufacturing marijuana and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He now appeals the district court's antecedent denial of his motion to suppress evidence seized in a search of a warehouse that was leased to him. Defendant Gregory George entered a guilty plea to the same crimes, and now challenges his sentence on constitutional grounds. We find the defendants' arguments to be without merit, and affirm.

### I.

On August 3, 1992, Detective Michael Stott of the Akron Police Department applied for a warrant to search a warehouse at 1140–42 Old South Main Street in Akron, Ohio. In his affidavit, Stott described a tip he had received from an unnamed informant:

Affiant states that the Information Source within the last ten days made the following observations about the inside of the above described location:

a. The Information Source observed two tables approximately 6 feet by 6 feet containing approximately 100 Marijuana plants per table. These plants were between 3 and 4 feet in height.

b. The Information Source observed 10 to 12 smaller tables, approximately 3 feet by 3 feet. These tables contained what appeared to be one Marijuana plant per table. These plants were 8 to 10 feet in height. These plants were tied at the top to the grow lights for support.

c. The Information Source observed large [fluorescent] growing lights over the tops of the tables and also a shelf containing several spray bottles of different colored liquids.

d. The Information Source observed an electrical control panel on the wall and several floor and exhaust fans.

e. The Information Source while making these observations saw an automatic sprinkler system placing a liquid mist over the Marijuana plants.

Elsewhere in the affidavit, Stott stated that another Akron police officer, one Harkness,

had recently encountered two men "welding the hinges shut on the outside doors" to the warehouse. When Harkness approached these men, they appeared "extremely nervous." Stott's affidavit provided no other significant information relating to the warehouse.

On the basis of Stott's affidavit, an Akron municipal court judge determined that probable cause existed to search the warehouse. The judge issued the search warrant on August 3 and it was executed later that day. The executing officers seized 219 marijuana plants and a large quantity of hydroponic growing equipment from the warehouse. The arrests of Sonagere and George were incident to this search. Subsequent investigation revealed that the warehouse was leased to Sonagere and that its utilities were in George's name.

Defendants were later charged in state court, but those charges were dropped. A federal grand jury subsequently returned a one-count indictment that charged each defendant with manufacturing marijuana and aiding and abetting. George pled guilty, but Sonagere filed a motion to suppress the evidence seized in the search of the warehouse. The district court held a hearing and denied this motion. Sonagere then entered his conditional guilty plea, but preserved his right to appeal the denial of his motion. These appeals followed.

## II.

Sonagere argues that the affidavit did not establish probable cause to search the warehouse. He further contends that the "good-faith" exception to the probable cause requirement (described in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)) does not apply to the facts of his case.

■ It is settled that a state magistrate's determination of probable cause is entitled to "great deference." *United States v. Leake,* 998 F.2d 1359, 1363 (6th Cir.1993) Our task on appeal is to determine whether, in light of the totality of the circumstances, the magistrate had a "substantial basis" for concluding that "a search would uncover evidence of

wrongdoing[.]" *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983).

■ Two factors are often critical in determining whether a confidential informant's tip provides such a "substantial basis." First, an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's] tip to greater weight than might otherwise be the case." *Id.* at 234, 103 S.Ct. at 2330. Second, the extent to which the tip is corroborated by the officers' own investigation is significant. *Id.* at 244, 103 S.Ct. at 2335.

■ In *Leake,* we considered these factors in the course of determining whether an anonymous informant's tip established probable cause for the search of a certain house. The informant there merely reported that he had smelled marijuana in, and seen marijuana "stacked in the basement" of, the house. 998 F.2d at 1361. The police placed the house under surveillance after receiving the tip, but observed "nothing unusual." *Id.* We held that the affidavit that was based upon this tip did not establish probable cause for two reasons: First, the tip "was not 'rich' in relevant detail[,]" and second, the officers' surveillance of the house did not yield any corroboration of the tip. *Id.*

Sonagere asserts that *Leake* is controlling here, but we disagree. First, unlike the tip in *Leake,* the tip here was extremely rich in relevant detail. The informant described the size and number of the marijuana plants in the building; the size, number, and shape of the tables upon which they rested; the manner in which the plants were supported; the lighting, ventilation, and watering systems used to grow the plants; and the presence of collateral items. This is a far cry from reporting that marijuana was "stacked in the basement."

Second, Officer Harkness' encounter with the two men outside the warehouse corroborated the tip to some extent. Like the "somewhat unusual travel plans" of the defendants in *Gates,* 462 U.S. at 246 n. 14, 103 S.Ct. at 2336 n. 14, the welding of the door hinges and the extreme nervousness of the men was unusual activity that suggested the existence of a criminal enterprise.

Sonagere stresses that the informant had never before provided the police with information. Given the other strengths of the affidavit, however, this fact does not overly concern us, since the anonymous informant in *Gates* likewise had no history of reliability. We also note that the affidavit in no way misrepresented the informant's history.

Sonagere also points out that the affidavit did not explain how the informant was able to enter the warehouse or how he was able to distinguish marijuana plants from other plants. We do not think the affidavit is undermined by these facts; the informant in *Gates* gave no hint of how he was able to observe or identify the drugs he said were kept in the Gates' basement, and the Supreme Court did not seem troubled by that fact.

We therefore conclude that the Akron municipal judge had a "substantial basis" for determining that Stott's affidavit established probable cause to search the warehouse. Since we so conclude, we need not address Sonagere's argument concerning the applicability of the *Leon* good-faith exception.

### III.

■ George asserts that his sentence was determined according to an unconstitutional provision of the Sentencing Guidelines. That provision is U.S.S.G. § 2D1.1(c*), which provides in relevant part:

> In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer then 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

Under this scheme, George was held responsible for the manufacture of 219 kilograms of marijuana. George argues that section 2D1.1(c*) is "irrational" and violates his right to "substantive due process."

■ We expressly rejected this precise argument in *United States v. Holmes,* 961 F.2d 599, 601–03 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 232, 121 L.Ed.2d 168 (1992).

Since we cannot overrule the published decision of another panel, *Salmi v. Secretary of HHS,* 774 F.2d 685, 689 (6th Cir.1985), we must reject George's argument as well.

**AFFIRMED.**

MERRITT, Chief Judge, dissenting.

I concur in the majority's decision affirming defendant George's sentence. I disagree with the majority's decision regarding Sonagere's suppression motion. The affidavit in support of the search warrant did not support a finding of probable cause and no reasonable police officer would have relied on the validity of the warrant. The seized evidence should have been suppressed.

The majority, citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), relies completely on the "extreme" richness of detail provided by the anonymous "information source." In the majority's view, that detail combined with the suspiciousness of two men welding the hinges of a door shut provide probable cause to issue a search warrant.

The majority is forced to overlook the many troubling aspects of this case and to give strained interpretations to *Gates* and *Leake* in order to reach their result. The "information source" here had never been used by the police before, the police officer testified that he had no basis to judge the source's credibility or reliability, the affidavit failed to provide any indication of the reliability of the source, the affidavit failed to state whether the source knew the name or names of the persons who owned the contraband or leased the warehouse, it failed to provide any date or dates upon which the source saw the contraband other than to say it was within the last ten days, it failed to set forth how the source was able to gain entry into the warehouse and it failed to describe any planned future activity that could have been verified by the police.

Even more troubling, the police officers did nothing to corroborate any of the information or develop independent information that might supplement that of the information source. After the police received the information they merely drove by the ware-

house and noticed two nervous individuals welding a door shut. That corroborates nothing that the "information source" told to the police and in no way indicates that marijuana is being grown inside the warehouse.

The majority is correct that rich detail can be an important element in assessing an anonymous tip. Detail becomes compelling, as in *Gates,* when the police are able to corroborate it through independent police work. "The court's decision in *Gates* rested primarily upon the very specific details in the letter, *and the subsequent thorough police confirmation of many of those details.*" *United States v. Leake,* 998 F.2d 1359, 1363 (6th Cir.1993) (emphasis added). In this case, the police failed to follow the dictates of *Gates* or *Leake* when they failed to do any investigation before applying for the search warrant, a basic principle which the Court has ignored.

If the majority is correct that detail is all that is needed to support a search warrant, the Fourth Amendment will no longer be any constraint or check on the issuance of search warrants. Any "detailed" information, uncorroborated by the police, from virtually any unknown, unreliable source, would support issuance of a search warrant. That cannot possibly be the meaning of probable cause under the Fourth Amendment. Now any sort of fabricated information designed to harass an enemy will get a search warrant issued. A home is not much of a castle anymore. The great drug war of our times has reduced the castle to a hovel where the state may presume that marijuana is grown.