UNITED STATES of America,
Plaintiff–Appellant,

v.

Ronald William SMITH,
Defendant–Appellee.

No. 98–1178.

United States Court of Appeals,
Sixth Circuit.

Argued June 1, 1999.

Decided and Filed June 30, 1999.

474

Jennifer J. Peregord (argued and briefed), Office of the U.S. Attorney, Detroit, Michigan, for Appellant.

Rafael C. Villarruel (argued and briefed), Federal Public Defenders Office, Detroit, Michigan, for Appellee.

Before: KEITH, CONTIE, and SUHRHEINRICH, Circuit Judges.

CONTIE, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. KEITH, J. (pp. 484–85), delivered a separate concurring opinion.

CONTIE, Circuit Judge.

Plaintiff-appellant, United States of America, appeals the district court's grant to Ronald Smith, defendant-appellee, of his motion to suppress the evidence seized and the statements made after the execution of a search warrant based on an affidavit indicating that illegal firearms would be found at his residence. For the following reasons, we reverse.

## I.

On July 16, 1996, a special agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), Joseph Secrete, presented a sworn affidavit to a United States magistrate in order to obtain a search warrant for defendant's residence at 9672 Herki-mer Street, Detroit, Michigan. The affidavit stated the following:

That your affiant is currently conducting an investigation on an individual identified as Ronald Smith.... Information has been developed that indicates Smith is involved in Federal firearms violations.

That your affiant conducted a check with the Recorder's Court of Detroit and learned that Smith has been convicted of several felony convictions. Most recently, he was convicted in 10/14/92 of Larceny in case number 92–731801.

That your affiant is being assisted in this investigation by a confidential informant identified as ATF–1. ATF–1 has on at least twenty-six (26) occasions provided information to ATF and the Detroit Police in reference to narcotics and/or firearms violations. In all instances the information provided by this source was investigated and found to be true. This information also led to several felony convictions based on the seizure of firearms and narcotics.

That on July 14, 1996, your affiant was advised by ATF–1 that within the past 48 hours he/she had been at 9672 Herkimer, Detroit, Michigan, and observed Ronald Smith in possession of a 9mm caliber pistol and a .45 caliber pistol.

That your affiant obtained a Detroit Police arrest photo 404655 of Smith. Officer Packard and your affiant conducted intermittent surveillance of 9672 Herkimer, Detroit, Michigan, during the past seven (7) days. It was during this surveillance that a subject matching Smith's description was entering and exiting this location.

That on July 11, 1996, your affiant spoke with Detroit Police Officers Adams and Wazinacick. These officers advised your affiant that on July 11, 1996, they interviewed Smith whereupon Smith stated he resided at 9672 Herkimer, Detroit, Michigan.

That your affiant caused a check with the Michigan Secretary of the State's Office and learned that Smith listed his home address as being 9672 Herkimer. That based upon the above information, the surveillance conducted by your affiant and the observations by the confidential informant, your affiant has probable cause to believe that Ronald Smith . . . is currently residing at 9672 Herkimer, Detroit, Michigan, and is using his location to store a .9mm caliber pistol and a .45 caliber pistol in violation of Title 18 Section 922(g).

The magistrate signed the search warrant, and it was executed two days later on July 18, 1996. The ATF agents seized approximately 14 grams of cocaine base and two firearms, a .22 caliber semi-automatic pistol, and a Winchester 12–gauge pump shotgun. Defendant was present at the execution of the search warrant, was given Miranda warnings, and signed a written confession admitting ownership of the guns and drugs.

On July 23, 1997, a grand jury in the Eastern District of Michigan returned an indictment against defendant Smith, charging him with possessing crack cocaine with intent to distribute (Count 1) and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count 2).

On November 14, 1997, defendant filed a motion to suppress the evidence seized and the statements he made after the execution of the search warrant and for production of the confidential informant. He contended that the informant, "ATF–1," did not exist and had been fabricated by Agent Secrete for purposes of securing the warrant. He also argued that the alleged knowing falsehood rendered the good faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) unavailable. A week later, defendant filed an unsworn affidavit in which he stated that he had not possessed the two guns described in the affidavit between July 10 and July 14, 1996, and that "to the best of [his] knowledge and recollection [he] did not invite any person or persons into [his] home that in turn could be ATF–1 within 48 hours of July 14, 1996."

On December 2, 1997, defendant filed a supplemental motion to suppress. In the supplemental motion, he shifted his argument and no longer contended that ATF–1 did not exist, but argued instead that the warrant did not contain sufficient probable cause because the supporting affidavit "failed to provide an 'explicit and detailed description' of wrongdoing nor does the warrant state sufficient corroboration by Agent Secrete." The supplemental motion relied heavily on the decision of this court in *United States v. Weaver*, 99 F.3d 1372 (6th Cir.1996).

A hearing was held before the district court on December 18, 1997. On January 12, 1998, the district court accepted defendant's arguments and issued an order granting defendant's motion to suppress the evidence, concluding that the affidavit was insufficient to establish probable cause, and the good faith exception of *Leon* did not apply. The United States timely filed an appeal. The United States argues that a warrant affidavit which recites that recent criminal activity was personally observed by a highly reliable informant, aspects of which are corroborated by further police investigation, establishes probable cause. For the following reasons, we agree.

## II.

When reviewing decisions on motions to suppress evidence, this court will uphold the factual findings of the district court unless clearly erroneous, while legal conclusions are reviewed *de novo*. *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993). The Fourth Amendment, which states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. CONST. amend. IV, requires that probable cause be determined "by a neutral and detached magis-

trate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out federal crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In order for a magistrate to be able to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. *Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A warrant must be upheld as long as the magistrate had a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing...." *Id.* at 236, 103 S.Ct. 2317. *See also United States v. Finch,* 998 F.2d 349, 352 (6th Cir.1993). The supporting facts in an affidavit need not be based on direct knowledge and observations of the affiant, but may come from hearsay information supplied by an informant. *Jones v. United States,* 362 U.S. 257, 269–70, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ In the seminal case involving an anonymous tip, the United States Supreme Court established a "totality of the circumstances" test for determining whether the tip established probable cause. In *Gates,* the Supreme Court stated the following:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence

of crime will be found in a particular place.

462 U.S. at 238, 103 S.Ct. 2317. Although rejecting a rigid application of the two-pronged "veracity" and "basis of knowledge" test fashioned in the cases of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court stressed that these factors remain highly relevant in the new analysis under the "totality of the circumstances" test. *Gates,* 462 U.S. at 230, 238, 103 S.Ct. 2317. "Veracity" involves the credibility of the informant or, alternatively, the reliability of the informant's report. *Id.* at 229, 103 S.Ct. 2317. An affidavit thus must contain a statement about some of the underlying circumstances indicating the informant was credible or that his information was reliable. *Aguilar,* 378 U.S. at 114, 84 S.Ct. 1509. "Basis of knowledge" refers to the particular means by which an informant obtained his information. *Gates,* 462 U.S. at 228, 103 S.Ct. 2317. There must be sufficient indication of the underlying circumstances from which an informant could reasonably conclude illegal activity is afoot. *Spinelli,* 393 U.S. at 416, 89 S.Ct. 584. In assessing an informant's "basis of knowledge," the degree of detail contained in a tip may be used to infer whether the informant had a reliable basis for making his statements. *Id.* An explicit and detailed description of the alleged wrongdoing allows a magistrate to "reasonably infer that the informant had gained his information in a reliable way." *Id.* at 417, 89 S.Ct. 584.

■ As the Supreme Court indicated in *Gates,* although "veracity," "reliability," and "basis of knowledge" are highly relevant in assessing the value of an informant's tip, these elements should not be understood as "entirely separate and independent requirements to be rigidly exacted in every case." 462 U.S. at 230, 103 S.Ct. 2317. Instead, they should be understood as "closely intertwined issues that may usefully illuminate the commonsense, prac-

tical question" of whether an informant's tip establishes probable cause. *Id.* Therefore, under a "totality of the circumstances" approach, a deficiency in one of these areas "may be compensated for, in determining the overall reliability of [an informant's] tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233, 103 S.Ct. 2317. The Court in *Gates* concluded that "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct. 2317. The court must ensure that the magistrate was informed of some of the underlying circumstances from which the informant concluded evidence of a crime is where he claimed it would be found, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was reliable. *Aguilar,* 378 U.S. at 114, 84 S.Ct. 1509.

■■■ In the present case, the district court accepted defendant's argument that even though the tip about the weapons came from an informant of known reliability, there was insufficient corroboration and explicitness of detail to establish probable cause for the issuance of a warrant. The district court believed that this court's opinion in *United States v. Weaver,* 99 F.3d 1372 (6th Cir.1996) established a more stringent standard for assessing a magistrate's probable cause determination. We disagree with this conclusion. The district court erroneously took statements in *Weaver* out of context instead of making an analysis under the *Gates* "totality of the circumstances" test. Instead of assessing the affidavit in terms of "veracity" and "basis of knowledge," the court focused on isolated issues (corroboration and explicitness of detail) and ignored other indicia of reliability. In so doing, the court invali-

dated the warrant by interpreting the affidavit "in a hypertechnical, rather than commonsense, manner," an approach which was rejected in *Gates,* 462 U.S. at 236, 103 S.Ct. 2317.

In applying the "totality of the circumstances" test, we will evaluate the "reliability" or "veracity" of the informant, the sufficiency of the subsequent corroboration of the tip, and the sufficiency of the affidavit's statement about the underlying circumstances from which the informant concluded illegal weapons would be found in defendant's home ("basis of knowledge").[1] In so doing, we find that in each of these areas, there are clear distinctions between the present case and *Weaver.*

### A.

■■■ First, in regard to "veracity," we find the affidavit in the present case contained a sufficient statement indicating why the affiant concluded that the informant, whose identity was not disclosed, was credible and that the information he provided was reliable. *Gates,* 462 U.S. at 229, 103 S.Ct. 2317. The reliability of hearsay statements of a confidential informant "may be corroborated by various means, including direct surveillance or circumstantial evidence, or [being] vouchsafed" by the affiant's statements about the informant's past performance. *United States v. Jordan,* 999 F.2d 11, 14 (1st Cir.1993). In the present case, the affiant, a highly experienced law enforcement officer, attested that the informant was one of unusual reliability. The affidavit stated that the informant identified as ATF–I had "on at least twenty-six (26) occasions provided information to ATF and the Detroit Police in reference to narcotics and/or firearms violations. In all instances, the information provided by this source was investigated and found to be true. This information also led to several felony con-

---

1. Although *Gates* involved an anonymous tip in which the prior reliability of the informant was unknown, this court has found that a court should apply the *Gates* "totality of the circumstances" analysis in cases involving known, reliable informants. *See United States v. Smith,* 783 F.2d 648, 650 (6th Cir.1986).

victions based on the seizure of firearms and narcotics." The fact that an informant is a person of proven reliability may be sufficient in itself to establish the veracity of the informant's hearsay statements. *McCray v. Illinois,* 386 U.S. 300, 302–04, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) (no doubt there was sufficient probable cause when first-hand information was provided by an informant who previously supplied police officers with accurate information about narcotics activities fifteen or sixteen times, and information resulted in numerous arrests and convictions). *See also Jordan,* 999 F.2d at 14; *United States v. Pressley,* 978 F.2d 1026, 1027 (8th Cir. 1992). We find that in the present case the informant had a prior track record of unusual reliability, which sufficiently substantiated his veracity.

In contrast, in *Weaver,* the court found that the boilerplate language in the pre-printed affidavit, indicating that the informant was a reliable one, was not sufficient to outweigh the affidavit's other deficiencies. The court stated the following in this regard:

> [T]he affidavit states that McCullough [the affiant] was relying on an informant who could identify marijuana and who on "occasion, or occasions, . . . [had] given information of violation of law of the state, which information thereafter was found to have been accurate and reliable." There is no indication in this affidavit that this informant provided reliable information in the past leading to drug-related arrests or prosecutions.

99 F.3d at 1379. In *Weaver,* the boilerplate language that the informant had previously provided information of "violation of law of the state" could have referred to anything from jaywalking to stolen property. As the Supreme Court indicated in *Gates,* 462 U.S. at 233, 103 S.Ct. 2317, a key consideration is whether the informant has provided reliable information in the past about the same type of criminal activity that is the subject of the warrant. This information was lacking in *Weaver,* as

there was no indication that the informant had previously provided reliable information about drug trafficking. In contrast, in the present case, the affidavit stated that the informant had previously provided reliable information in regard to the same illegal conduct that was the subject of the warrant—illegal possession of firearms. Moreover, in the present case, the informant's prior information led not only to seizures of firearms and narcotics, but also to several felony convictions based on those seizures. Similar information about assistance leading to convictions was not present in *Weaver.* Finally, the confidential informant in the present case had provided police with reliable information on *twenty-six* (26) separate occasions, far more times than the vague "on occasion or occasions" stated in the *Weaver* affidavit. Therefore, we find that the information provided in the affidavit in the present case about the informant's veracity is much stronger and offense-specific than the vague information provided in the affidavit in *Weaver.*

### B.

Second, we will consider the issue of corroboration. It should be noted that in *Gates,* the need for subsequent corroboration was discussed as a means of assessing the reliability of an anonymous tip provided by someone completely unknown to the police. 462 U.S. at 244, 103 S.Ct. 2317. When an informant has a proven track record for providing reliable information, corroboration of the information he provides is not necessarily essential, as long as there is sufficient indication of his basis of knowledge for concluding that contraband or evidence of a crime will be found in a particular place. *See Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, *or* if it is corroborated by independent evidence).

In *Weaver*, this court found that the lack of subsequent corroboration by the police was critical because the affidavit gave no indication why the informant concluded the marijuana he had observed on the defendant's premises was for distribution rather than for personal use. The *Weaver* affidavit stated that an unspecified quantity of marijuana was seen by the informant, who concluded that the marijuana was for distribution. However, there was no statement indicating the informant's basis of knowledge for concluding that the marijuana was for distribution, rather than for personal use, and that a search of the premises would uncover evidence of drug trafficking.[2] Therefore, the *Weaver* court decided further corroboration was needed, pointing out that the affiant "undertook no substantive independent investigative actions . . ., such as surveillance of the Weaver residence for undue traffic or a second controlled purchase made with officers viewing." 99 F.3d at 1379. In *Weaver*, it was necessary to establish more than the mere location of marijuana on the premises to establish probable cause, and the lack of subsequent corroboration by the police of drug trafficking activity was deemed by the court to be a crucial deficiency.

In contrast, in the present case, the affidavit sought to establish probable cause for illegal gun possession—a mere possessory crime—not illegal drug distribution.[3]

The information provided by Agent Secrete's affidavit stated that the reliable informant saw defendant Smith with two specific weapons, a .9mm caliber pistol and a .45 caliber pistol, at a specific address within the 48 hours before the search warrant was issued. The informant's basis of knowledge was firsthand, and there was no need for the informant to speculate further about whether a crime was being committed because mere gun possession by a felon constitutes a felony. In contrast, in *Weaver*, the informant had to speculate if the marijuana was for distribution, rather than for the defendant's own use. In the present case, the only evidence needed to establish probable cause of illegal activity was defendant's possession of the firearms, and corroboration that defendant was a felon and currently living on the premises. Independent investigation by the police determined that defendant was indeed a former felon, for whom it was illegal to possess firearms, and that the premises where the guns were seen was his home. Courts have acknowledged that individuals who own guns keep them at their homes. *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir.1986); *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir.1975); *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

We find the officers did everything necessary to corroborate the informant's tip

---

**2.** Although in *Weaver*, the informant alleged he had purchased one-half ounce of marijuana from defendant Weaver, this information was not contained in the affidavit, which consisted of a preprinted form with boilerplate text. The affidavit merely stated that the affiant believed Weaver "is now unlawfully keeping a quantity of *marijuana* for the purpose or with the intention of unlawful possession, sale or transportation thereof," because a reliable informant had within the last 72 hours "personally observed (*Gary Weaver*) having personal possession and control over a quantity of (*marijuana*) being held expressly for the purpose of unlawful distribution." 99 F.3d at 1375–76. In assessing the "veracity," "reliability" and "basis of knowledge" of an informant's tip, the reviewing court is concerned exclusively with the statements contained within the affidavit itself. *See Whiteley*, 401 U.S. at 564–65, 91 S.Ct. 1031; *United States v. Hatcher*, 473 F.2d 321, 323 (6th Cir.1973).

**3.** Although in *Weaver*, the defendant was ultimately convicted for the unlawful possession of a firearm, rather than drug trafficking, the search warrant involved probable cause for drug trafficking, not illegal gun possession. During the execution of the warrant, the police found rifles and ammunition in an outbuilding on Weaver's property, but no evidence of possession, distribution, or growth of marijuana other than a quarter-ounce of marijuana. Therefore, the authorities did not charge Weaver with any marijuana-related offenses. 99 F.3d at 1376.

about illegal gun possession. The police verified that defendant Smith was a convicted felon, lived at the address in question, and had been observed entering and leaving the location within the past week. Defendant's position, essentially, is that unless the police conducted surveillance and saw defendant with a gun, there would be insufficient corroboration. We emphatically disagree. The Supreme Court explicitly stated in *Gates* that each factual allegation put forth in an affidavit need not be independently documented. 462 U.S. at 231 n. 6, 103 S.Ct. 2317. Instead, probable cause simply requires that enough information be presented for a magistrate to make the judgment that "the charges are not capricious and are sufficiently supported to justify bringing into play further steps of the criminal process." *Id.* In the present case, we find that the police conducted sufficient investigation to meet this requirement. The district court erred in superimposing the need for the type of surveillance deemed lacking in *Weaver* in the present case, which involved a mere possessory crime.[4]

### C.

Finally, we will assess the affidavit in regard to "basis of knowledge." "Basis of knowledge," as a component in assessing probable cause, was thoroughly discussed by the Supreme Court in *Spinelli v. United States,* which involved a tip by an informant who stated that the defendant was involved in bookmaking. The Court found, "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's gener-

al reputation." 393 U.S. at 416, 89 S.Ct. 584. In other words, it is when there is no indication how an informant came by his information that explicitness of detail is needed. In the present case, the affidavit indicated how the informant gathered his information about illegal gun possession—by firsthand observation.

In contrast, in *Weaver,* there was insufficient detail in the affidavit to indicate the underlying circumstances from which the informant concluded that the defendant was engaged in drug trafficking, which could have been merely a rumor. The *Weaver* court stated the following in this regard:

> Reading this affidavit in a "practical, common-sense" manner, the only claim of possible wrongdoing is the averment that, within three days prior to the affidavit date, the informant was on the suspect premises and, while there, he saw some quantity of marijuana "expressly for the purpose of unlawful distribution." McCullough [the affiant] presents no underlying factual circumstances to support the informant's knowledge regarding distribution, nor the detective's own "belief" that these quantities of marijuana were present "for the purpose or with the intention of unlawful possession, sale or transportation," or even that marijuana would be on the premises when the warrant was executed. The government asks us to recognize that McCullough did not include additional drug-related information in the affidavit, including the circumstances of the drug transaction between Weaver [the defendant] and Dinovo [the informant], because to do so would have tipped Weaver off to the identify of the informant and possibly jeopardize the informant's safety.... Nevertheless, par-

**4.** We do not mean to imply that corroboration is always necessary in cases involving either illegal gun possession or drug trafficking. As courts have indicated, the fact that an informant is a person of proven reliability may be sufficient in itself to establish the reliability of the informant's hearsay statements without further corroboration. *Jordan,* 999 F.2d at 14; *Pressley,* 978 F.2d at 1027.

ticularized facts regarding alleged wrongdoing that did not identify Dinovo could have been discovered and included in the affidavit without necessarily jeopardizing the identity of the informant.... For instance, a description of the marijuana and how it was maintained, identifying aspects of the location in the residence where the marijuana or distribution paraphernalia was seen or kept, a description of Weaver, information on the distribution operation, etc. could have been elicited from the informant, either at the time of this transaction or over the course of a surveillance.

99 F.3d at 1378 (citations omitted). The lack of detail was deemed critical in *Weaver,* because without such detail, there was insufficient information to indicate the informant's or the affiant's basis of knowledge for concluding that there would be evidence of drug trafficking on the premises.

 In contrast, in the present case, more explicit detail about defendant or the location of the guns was not needed to establish a sufficient basis of knowledge. First, the fact that the illegal gun possession was observed firsthand, and was not merely a rumor which the informant had overheard, entitled the tip to greater weight than might otherwise be the case. *Gates,* 462 U.S. at 234, 103 S.Ct. 2317. Second, and more important, an explicit and detailed description of alleged wrongdoing, which allows a magistrate to "reasonably infer that the informant had gained his information in a reliable way," *Spinelli,* 393 U.S. at 417, 89 S.Ct. 584, was not critical, because an unusually reliable informant observed the weapons on the premises firsthand. The Court in *Gates* specifically stated in this regard:

> If, for example, a particular informant is known for the *unusual reliability* of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.

462 U.S. at 233, 103 S.Ct. 2317 (emphasis added). In the present case, the informant was known for the unusual reliability (26 occasions) of his predictions regarding illegal gun and drug possession in the locality, and the failure of the affidavit to more thoroughly set forth a detailed description of the alleged wrongdoing was not a bar to a finding of probable cause.[5]

The district court thus misread *Weaver* and took statements out of context when it concluded that, in the present case, the lack of detail precluded a finding of probable cause. In *Weaver,* the court found the affidavit contained "few, if any, particularized facts of an incriminating nature and little more than conclusory statements of the affiant's belief that probable cause existed regarding criminal activity." 99 F.3d at 1379. The *Weaver* affidavit was thus deficient in establishing sufficient "basis of knowledge." In contrast, in the present case, the affidavit contained sufficient facts of an incriminating nature and a sufficient basis for concluding that probable cause existed regarding criminal activity. When the Supreme Court made a statement in *Gates* about "an explicit and detailed description of alleged wrongdoing," it was doing so in reference to an anonymous tipster or informant of dubious reliability. 462 U.S. at 234, 103 S.Ct. 2317.[6] In the

---

5. Moreover, if more detail was provided in the warrant about where the guns were kept and what defendant was doing with them, it might have given away the confidential informant's identity. A limited privilege exists to withhold information which could identify an informant. *United States v. Jenkins,* 4 F.3d 1338, 1340 (6th Cir.1993), *cert denied,* 511 U.S. 1034, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994).

6. We note that in his brief, defendant-appellee quotes the phrase, "explicit and detailed description of alleged wrongdoing," from *Gates* out of context. The sentence from *Gates* reads in its entirety as follows:

> Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event

same paragraph in *Gates,* the Court indicated that in contrast, when information is provided by a known reliable informant, an "explicit and detailed statement of alleged wrongdoing" is not critical in establishing probable cause. *Id.* at 233, 103 S.Ct. 2317. The Court explicitly found that a detailed statement thoroughly setting forth the informant's basis of knowledge is not necessarily required if there are other indicia of reliability. In requiring more elaborate detail in the present case, the district court was reverting to "an excessively technical dissection of [the] informant['s] tip[ ], with undue attention being focused on isolated issues," *id.* at 234–35, 103 S.Ct. 2317, rather than making a balanced assessment under the "totality of the circumstances" test.

### III.

■ To conclude, we believe the district court erred in finding that the affidavit lacked sufficient detail or corroboration to establish probable cause. Corroboration and an explicit and detailed description of wrongdoing are not automatic requirements for establishing probable cause, but are only two factors to be considered under the *Gates* "totality of the circumstances" test, which requires "a balanced assessment of the relative weights of all the various indicia of reliability." *Id.* at 234, 103 S.Ct. 2317.[7] Although either richness of detail or a heightened level of corroboration may be required where information is provided by an anonymous informant of unknown veracity, *Gates,* 462 U.S. at 227–38, 103 S.Ct. 2317; *Leake,* 998 F.2d at 1363–65, information supplied by an informant of proven reliability may be sufficient, standing alone, to demonstrate probable cause. *McCray v. Illinois,* 386 U.S. at 302–04, 87 S.Ct. 1056; *United*

*States v. Jordan,* 999 F.2d at 14; *United States v. Laury,* 985 F.2d 1293, 1313 (5th Cir.1993); *United States v. Finch,* 998 F.2d at 352; *United States v. Pressley,* 978 F.2d at 1027. In other words, if the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required. As the Supreme Court stated in *Gates,* the "veracity" prong can be satisfied if there is a sufficient basis for concluding that the informant is credible. 462 U.S. at 229, 103 S.Ct. 2317. Accordingly, this court has upheld warrants for illegal gun possession based primarily on the known reliability of confidential informants who have observed evidence of criminal activity firsthand. *See United States v. Campbell,* 878 F.2d 170, 174 (6th Cir.) (information from three reliable informants that they had seen defendant routinely possess a firearm on his person was sufficient to support a finding of probable cause under commonsense "totality of the circumstances" test), *cert. denied,* 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989); *United States v. Jenkins,* 525 F.2d 819, 821–24 (6th Cir.1975) (under the stricter test of *Aguilar* and *Spinelli,* the court found that once it was established that defendant was a convicted felon, probable cause to arrest defendant existed after a reliable informant stated he personally saw the defendant carrying a gun).

We find that the affidavit in the present case sufficiently sets forth "some of the underlying circumstances from which the informant concluded that the [guns] were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant ... was 'reliable.'" *Aguilar,*

---

was observed firsthand, entitles his tip to greater weight than might otherwise be the case.
462 U.S. at 234, 103 S.Ct. 2317. In the present case, there was no reason to doubt the informant's motive.

**7.** Although this court in *United States v. Sonagere,* 30 F.3d 51, 53 (6th Cir.1994) stated

that corroboration and explicitness of detail are "often critical," this does not mean they are dispositive requirements for establishing probable cause. In *Sonagere,* the informant had *never before* provided the police with information, *id.* at 54, and corroboration and explicitness of detail were the only indicia of reliability.

378 U.S. at 114, 84 S.Ct. 1509. More is not required. Rather than assessing the overall sufficiency of the affidavit in regard to "veracity" and "basis of knowledge," the district court focused exclusively on corroboration and explicitness of detail, which *Gates* makes clear are not dispositive requirements if there are other indicia of reliability. 462 U.S. at 231 n. 6, 233, 103 S.Ct. 2317. The district court took statements made by this court in *Weaver* out of context, failing to see that *Weaver* is a fact-specific case, easily distinguishable from the present one. In *Weaver*, the fatal weaknesses in the affidavit were a vague statement of reliability which did not address the alleged wrongdoing, the lack of detailed information indicating the informant's or affiant's basis of knowledge for concluding that the marijuana was for distribution, and the lack of any corroboration of drug trafficking through surveillance or a controlled buy, which reasonably could have been undertaken. In contrast, in the present case, the affidavit indicated the informant was one of unusual reliability, it sufficiently described the underlying circumstances for concluding illegal guns would be found on the premises, and the subsequent investigative measures undertaken by the police were appropriate and adequate.

For these reasons, we find that under a "totality of the circumstances" analysis, the affidavit had sufficient indicia of the informant's "veracity" and a sufficient statement of "basis of knowledge" to establish probable cause for the issuance of a search warrant. Because the issuing magistrate had a substantial basis for concluding that there was a fair probability that illegal weapons would be found on defendant's premises, the district court erred in granting defendant's motion to suppress. The district court is hereby **REVERSED**, and the case is **REMANDED** for proceedings consistent with this opinion.

KEITH, Circuit Judge, concurring.

I wholeheartedly agree with my colleagues that the search warrant at issue was supported by adequate probable cause. The sworn affidavit was amply supported by the eyewitness account of a reliable confidential informant, contained sufficient richness of detail, and was adequately corroborated by the investigating agent. I further agree that, in this case, where a possessory offense is at issue, there were no additional, reasonable steps which the investigating officer could have pursued to establish probable cause, other than observing Defendant firsthand with firearms. Although the result reached by the panel in this case is, in my opinion, accurate and consistent with the law of this Circuit, I write separately to emphasize that our determination is limited to the particular and specific circumstances of this case.

In *United States v. Weaver*, 99 F.3d 1372 (6th Cir.1996), this Circuit appropriately decided that the affidavit in question did not support issuance of a search warrant, in part, because there were additional investigative actions which could have reasonably been taken to corroborate the informant's claims. In *Weaver*, where the affidavit at issue alleged that defendant kept marijuana "with the intention of unlawful possession, sale or transportation thereof," *id.* at 1375, the officers relied solely on the informant's claim that the narcotics were held expressly for the purpose of unlawful distribution. *Id.* at 1375–76, 1378–79. The affidavit lacked specific details which would have had supported the informant's belief that the marijuana was intended for distribution. *Id.* at 1378. Moreover, the officers made no attempts to independently confirm the informant's distribution claim, even though this information could have reasonably and easily been corroborated either by surveilling the location for undue traffic or conducting a controlled purchase. *Id.* at 1379.

Because of the possessory nature of the offense at issue in the present matter,

unlike the situation in *Weaver*, there was simply nothing more the agents could have done to establish probable cause. While this panel upholds the validity of the search warrant in this case, this disposition should in no way be interpreted as a relaxation of the rigors with which police officers must comply in obtaining a warrant. This decision should neither be construed as signaling an erosion of the rights and guarantees of the Fourth Amendment, nor should it be applied broadly. We will remain ever vigilant in protecting citizens' Fourth Amendment rights; the specifics of this case, however, dictate that sufficient probable cause existed for a warrant to issue.