**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Herbert Rice, Thomas FLOYD,**
**Defendant.**

**No. CR 3–01–081.**

United States District Court,
S.D. Ohio,
Western Division.

Oct. 15, 2002.

David Horne, Cincinnati, OH, for plaintiff.

Vincent Paul Popp, Popp & Tuss, Cheryll Antoinette Bennett, Federal Public Defender, Dayton, OH, for defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. # 14); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S REQUEST FOR DISCOVERY (DOC. # 22)

RICE, Chief Judge.

Defendant Thomas Floyd ("Defendant" or "Floyd") is charged in the Indictment (Doc. # 7) with two counts of distributing 1,4–butanediol, a controlled substance analogue to gamma hydroxybutyrate ("GHB"), in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2; one count of distributing gamma butyrolactone ("GHL"), a controlled substance analogue to GHB, in violation of § 841(a) and § 2; and one count of attempting to possess with intent to distribute 1,4–butanediol, a controlled substance analogue to GHB, in violation of § 841(a) and § 2. This case is now before the Court on the Defendant's Motion to Suppress Evidence (Doc. # 14), and his Request for Discovery (Doc. # 22). As a means of analysis, the Court will rule upon these

motions in the order in which they were filed.

*I. Motion to Suppress Evidence (Doc. # 14)*

With this motion, the Defendant requests that the Court suppress the evidence which the Government obtained as a result of the September 5, 2001, detention and search of an Express Mail package addressed to The Liberty Company ("TLC") at the Mail Boxes, Etc., where Defendant received mail.[1] In particular, the Defendant contends that the Court must suppress the evidence obtained from that package, as well as that obtained when he was arrested on September 6, 2001, and when his residence was searched on September 7, 2001. On January 28, 2002, the Court conducted an oral and evidentiary hearing on that motion. In accordance with the briefing schedule set by the Court, the parties have submitted their post-hearing memoranda. *See* Docs. 29, 30 and 33. The Court now rules on the Defendant's request to suppress evidence.

In May, 2001, Suzanne McDonough ("McDonough"), a United States Postal Inspector working at the Dayton, Ohio, airport, was contacted by Special Agent Carrie Woods ("Woods") of the Food and Drug Administration, who indicated that she had made controlled purchases of two different products from TLC, via the Internet. Floyd is alleged to be the owner of TLC, which is operated out of his residence. One of those products, which was called "Dream On," was found to contain gamma butyrolactone, an analogue substance of GHB.[2] Laboratory analysis of the other product, which was called "Max GH," revealed that it did not contain any of the ingredients listed on its label or in its advertising. That product was, therefore, misbranded. As a result of the information Woods had conveyed to her, McDonough initiated a mail watch on Defendant.

On August 29, 2001, postal officials at the Dayton Airmail Facility, including McDonough, intercepted an Express Mail package addressed to TLC at the Mail Boxes, Etc. where Defendant received mail. The package bore a fictitious return address. As a consequence, it was subjected to a sniff by a drug detection dog, which alerted positively. Thereafter, McDonough obtained a search warrant for that package. When that warrant was executed and the package was searched, three hundred-one, 2.5 mg tablets of Oxandrin, a steroid which is a Schedule III controlled substance, were discovered.

On September 5, 2001, another, similarly addressed Express Mail package was intercepted by McDonough at the Dayton Airmail Facility. The return address for that package was Creative Marketing, 1509 S.E. 10 Place, Cape Coral, Florida, 33990. McDonough contacted Detective Roger Rockwell of the Dayton Police Department who traveled to that facility with Rusty, his drug detection dog. Rusty did not alert positively on that package. However, since Rusty was trained to detect only cocaine, heroin, marijuana, hash, methamphetamine and ecstacy, the package could have contained a controlled substance such as steroids, which would not have caused that canine to alert. In addition, McDonough contacted directory as-

---

1. The Defendant's Motion to Suppress Evidence relates to the Fourth Count in the Indictment, attempting to possess with intent to distribute 1,4–butanediol. Counts One through Three are based upon incidents which occurred long before the September, 2001, detention and search of the Express Mail package addressed to TLC.

2. GHB, which is commonly called the "date rape" drug, is a Schedule I controlled substance.

sistance in Cape Coral, Florida, in an effort to obtain a telephone number for Creative Marketing in that city. She was told that no such business was located in Cape Coral, Florida; however, she was given the telephone number for a Creative Marketing, located in Ft. Meyers, Florida. When she called that telephone number, McDonough spoke with Barbara Ferguson ("Ferguson"), a manager of Creative Marketing. Ferguson told McDonough that Creative Marketing's address was 5100 S. Cleveland, Suite 318–376, Ft. Meyers, Florida, 33919. In addition, Ferguson told McDonough that she was not aware of a business called Creative Marketing located in Cape Coral, Florida.

Armed with the information she had obtained in her investigation, McDonough executed an affidavit, with which she obtained a search warrant for the Express Mail package from Magistrate Judge Michael Merz at approximately 9:54 a.m., on September 5, 2001. While McDonough had conducted her investigation of the package and while she was obtaining the search warrant, the package had been removed from the ordinary flow of the mail.

When McDonough executed the search warrant and opened the Express Mail package, she discovered three one-liter bottles, with labels indicating that they contained 1,4–butanediol, an analogue substance of GHB, a Schedule I controlled substance. McDonough took those bottles to the Miami Valley Crime lab, which confirmed that they contained the substance listed on their labels. At that point, McDonough decided to make a controlled delivery of the package to the Defendant.

To effectuate that plan, McDonough sought and obtained from Judge Merz a warrant authorizing the installation of a tracking device in the package. In addition, the 1,4–butanediol was removed from the package and replaced with water.

On September 6, 2001, at approximately 6:00 p.m., the Express Mail package was delivered to the Defendant at the Mail Boxes, Etc., located at 707 State Route 725, in Centerville, Ohio. After Floyd had accepted delivery of the package, he placed it in the back seat of his automobile and drove away. Law enforcement officers followed him as he traveled in his automobile to O'Leary's Pub, located on State Route 48 in Centerville. The Defendant remained at that establishment for approximately two and one-half hours. He then went to Hot Spot Tanning, a tanning salon located on State Route 725 in Centerville. At approximately 9:00 p.m., officers went into the tanning salon and arrested the Defendant. When Floyd was arrested, officers seized his car keys and cellular telephone. McDonough, who had been involved in the surveillance of the Defendant and was at the scene of his arrest, observed the Express Mail package in plain view, sitting on the back seat of Defendant's automobile. She asked Floyd whether he would give her consent to remove the package from his car, telling him that his automobile would be impounded if he did not allow her to remove the package. The Defendant told her to impound the automobile.[3] Accordingly, she telephoned the Assistant United States Attorney handling this prosecution, who advised that the Defendant's automobile could be

**3.** During the suppression hearing, McDonough testified on direct examination that the Defendant did not acknowledge whether or not he would consent and that she was not certain whether he was capable of giving consent, since he had spent approximately two and one-half hours inside O'Leary's Pub. On cross-examination, she admitted that, during Defendant's detention hearing, she had previously testified about the version of events set forth in the text above. The Court credits McDonough's testimony during the detention hearing, rather than that she gave during the suppression hearing, since it was given only a few days after the occurrence of the events about which she was testifying.

searched to seize the Express Mail package, since it was in plain view. As a consequence, McDonough seized that package. The next day, she executed another affidavit with which officers were able to obtain a search warrant from Judge Merz for Defendant's residence.

In his post-hearing memorandum, the Defendant argues that the Court should suppress the evidence seized from the Express Mail package, as well as that which was taken from him and his automobile when he was arrested and that which was seized when his residence was searched. The Defendant asserts that McDonough illegally detained the package and that her affidavit did not establish probable cause to search it. Floyd also asserts that the Court must suppress the evidence seized from him, his automobile and his residence, as fruit of the poisonous tree (the poisonous tree being the illegal detention and search of the Express Mail package). The Government disputes the Defendant's assertions that McDonough illegally detained the package and that the search

warrant for the package was not supported by probable cause. In addition, the Government argues that even if that search warrant were not supported by probable cause, the evidence seized when the package was searched need not be suppressed in accordance with the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). As a means of analysis, the Court will initially discuss the parties' argument pertaining to Floyd's assertion that the Express Mail package was illegally detained. If the Court rejects that argument, it will then turn to his contention that the search warrant for that package was not supported by probable cause and the Government's rejoinder that the evidence seized from it cannot be suppressed under *Leon*.[4]

The Defendant argues that McDonough violated his rights under the Fourth Amendment by detaining the Express Mail package addressed to TLC, when she removed it from the ordinary flow of the mail.[5] According to the Defendant, the

**4.** The Defendant does not argue that there is a basis for suppressing the evidence which was seized from him, his automobile and from his residence, *if* the detention and search of the Express Mail package were permissible. In addition, the Government does not dispute Defendant's premise that the evidence seized from him, his automobile and his residence must be suppressed, as fruit of the poisonous tree, *if* the evidence taken from the package must be suppressed. Therefore, the Court will suppress the evidence seized from the Defendant and his automobile when he was arrested and from his house when it was searched, *if* it concludes that it must suppress the evidence discovered in the package.

**5.** The Supreme Court has indicated that a seizure "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). Herein, it is question-

able whether McDonough interfered with the Defendant's possessory interest in the Express Mail package in a meaningful way before Judge Merz issued the search warrant for that package. McDonough intercepted the package at the mail facility located at the Dayton Airport, sometime during the morning of September 5, 2001. The label for the package indicated that delivery had been promised by noon on September 5th. In other words, the Defendant did not have a right to possess it until noon. Judge Merz issued that warrant at 9:54 a.m., on that date. There is no indication that the package could not have been delivered from the Dayton Airport to Mail Boxes, Etc., in Centerville, in two hours, if Judge Merz had refused to grant the requested search warrant or if no contraband had been discovered therein. Consequently, one could question whether the detention of the package was a seizure under the Fourth Amendment. *See United States v. England*, 971 F.2d 419 (9th Cir.1992) (holding package was not seized when it was detained, since it could have been delivered in timely fashion, if

Government can detain a package only if reasonable suspicion exists to believe that the package contains contraband. In support of this argument, the Defendant relies upon *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), in which a unanimous Supreme Court, in an opinion written by Justice Douglas, concluded that mail is free from inspection and detention, except in the manner provided by the Fourth Amendment. Therein, the defendant mailed two 12–pound packages to different destinations from a post office in rural Washington. For purposes of insurance, he declared that the packages contained coins and valued each package at $10,000. The suspicions of a postal clerk were aroused, and he told a police officer, who happened to be in the post office, about those concerns. The officer noticed that the return addresses for the packages were fictitious, since they were for a vacant housing project, and that the automobile in which the defendant had driven to the post office had British Columbia license plates. Law enforcement officials detained the packages for the next 29 hours, while they investigated the matter and obtained a search warrant for them. When the warrant was executed and the packages opened, officers discovered gold coins. As a result, the defendant was charged with and convicted for illegally importing such coins. Upon appeal, the Ninth Circuit reversed, concluding that the gold coins should have been suppressed, because the search warrant was not obtained in timely fashion and that, therefore, their 29–hour detention had violated the Fourth Amendment. The Government appealed that decision to the Supreme Court, which reversed. The Supreme Court held that one must apply the reasonable suspicion standard set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in order to determine whether the 29–hour detention of the packages, in order to conduct the investigation and to obtain the search warrant, had violated the Fourth Amendment. The *Van Leeuwen* Court also concluded that the detention was justified under that standard by the nature and weight of the packages, the fictitious return address and the fact that the person mailing the packages drove an automobile with British Columbia license plates.

■ The Courts of Appeals, including the Sixth Circuit, have applied *Van Leeuwen* and have held that the detention of a package in order to conduct an investigation is permissible, as long as it is supported by reasonable suspicion. *See e.g., United States v. Glover*, 104 F.3d 1570, 1576 (10th Cir.1997), *United States v. Reid*, 1995 WL 579436 (6th Cir.1995); *United States v. Banks*, 3 F.3d 399 (11th Cir.1993) (and cases cited therein), *cert. denied*, 510 U.S. 1129, 114 S.Ct. 1097, 127 L.Ed.2d 410 (1994). Accordingly, the Court turns to the question of whether the detention of the Express Mail package addressed to TLC was supported by reasonable suspicion.

On September 5, 2001, when McDonough detained the package addressed to TLC at the location where Defendant received his mail, she knew that one week earlier, he had received an Express Mail package with a fictitious return address which contained three hundred-one, 2.5 mg tablets of Oxandrin, a steroid which is a Schedule III controlled substance. She also knew that the Defendant had previously shipped an analogue substance of GHB, a Schedule I controlled substance, on one occasion, and a misbranded prod-

cocaine had not been discovered inside). However, since the Government has failed to argue that the Express Mail package was not seized, the Court does not base its decision herein on that issue.

uct, on another. During her investigation, McDonough learned that the Express Mail package in question had a fictitious return address, just as had the package containing steroids which had been sent to Defendant a week earlier.

Courts have held that the prior receipt or shipping of a package containing controlled substances is tantamount to reasonable suspicion, justifying the detention of a later package for purposes of an investigation. For instance, in *Reid, supra,* the Sixth Circuit concluded that there existed reasonable suspicion to detain a package the defendant had shipped by Federal Express, because the defendant had previously shipped controlled substances by Federal Express, San Diego was a known source for drugs and he had paid cash to ship the package. In *Glover, supra,* the Tenth Circuit concluded that reasonable suspicion existed, because the defendant's daughter was involved in drug trafficking and previous packages set to the defendant had fictitious return addresses.

Nevertheless, Defendant contends that McDonough did not have reasonable suspicion, because an entity called Creative Marketing operated from the return address listed on the Express Mail package, 1509 S.E. 10 Place, Cape Coral, Florida, 33990. During the suppression hearing, he presented evidence in an effort to support that proposition. Even if the Court were to accept that the Defendant's evidence established that proposition, that fact would not destroy the existence of reasonable suspicion. It is uncontroverted that at the time she detained the package and requested a search warrant, McDonough quite reasonably believed that Creative Marketing did not operate from that address. She had attempted to obtain a telephone number for Creative Marketing in Cape Coral, only to be told that the no such business was located in that town. She was given the telephone number of a business with that name, located in the adjoining town, Ft. Meyers. McDonough called that business and was told by the manager of Creative Marketing that no such business existed in Cape Coral. It is axiomatic that the existence of probable cause and reasonable suspicion must be determined based upon the officers' knowledge at the time of the search or seizure. *See* 2 LaFave *Search and Seizure,* § 3.2(d). Consequently, just as the discovery of a controlled substance in the package, after it has been searched, cannot be used to buttress the existence of reasonable suspicion or probable cause, the subsequent assumed discovery that an entity named Creative Marketing conducted business at the address listed on the package cannot be used to detract from reasonable suspicion or probable cause, as it existed at the time of the search.

In addition, the Defendant argues that, even if McDonough had reasonable suspicion to detain the Express Mail package initially, such was destroyed when Rusty failed to alert on that package. This Court does not agree. McDonough had evidence that the Defendant had trafficked in an analogue substance of GHB, steroids and misbranded products. Rusty was trained to detect only cocaine, heroin, marijuana, hash, methamphetamine and ecstacy; however, McDonough had no information that Floyd had trafficked in any of those substances. Therefore, the failure of Rusty to alert on the Express Mail package did not strip McDonough of reasonable suspicion to hold the package while she continued her investigation.[6]

---

6. If McDonough had been investigating packages mailed to Defendant because he was suspected of trafficking cocaine, heroin, marijuana, hash, methamphetamine and/or ecsta-cy, the failure of Rusty to alert on the package might very well have annulled her reasonable suspicion.

■ Based upon the foregoing, the Court concludes that the Defendant's rights under the Fourth Amendment were not violated by the detention of the Express Mail package, while McDonough conducted her investigation and obtained a search warrant. Having so concluded, the Court turns to the question of whether the search warrant issued by Judge Merz was supported by probable cause and, if not, whether the evidence seized from the package is exempt from suppression in accordance with *Leon* and the good faith exception to the exclusionary rule. The Court begins its analysis by setting forth the legal standards it must apply to make those determinations.

In *United States v. Smith*, 182 F.3d 473 (6th Cir.1999), the Sixth Circuit restated certain fundamental principles that a court must apply when a defendant argues that evidence, seized upon the execution of a search warrant, must be suppressed, because the supporting affidavit did not establish the existence of probable cause:

> The Fourth Amendment, which states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. CONST. amend. IV, requires that probable cause be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out federal crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In order for a magistrate to be able to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. *Whiteley v. Warden*, 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Ben-*

*nett*, 905 F.2d 931, 934 (6th Cir.1990). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A warrant must be upheld as long as the magistrate had a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing...." *Id.* at 236, 103 S.Ct. 2317. *See also United States v. Finch*, 998 F.2d 349, 352 (6th Cir.1993).

*Id.* at 476–77. In *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court stressed that the existence of probable cause must be determined from the totality of the circumstances. In *Gates*, the Supreme Court noted that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317. When determining whether the affidavits established the existence of probable cause to believe that contraband or evidence of criminal activity would be found at the places to be searched, this Court must examine the totality of those circumstances in a "realistic and commonsense fashion." *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir.1998), *cert. denied*, 526 U.S. 1077, 119 S.Ct. 1480, 143 L.Ed.2d 563 (1999). Of course, this Court also must afford great deference to the determination of probable cause made by Judge Merz who issued the search warrants. *United States v. Allen*, 211 F.3d 970 (6th Cir.) (*en banc*), *cert. denied*, 531 U.S. 907, 121 S.Ct. 251, 148 L.Ed.2d 181 (2000); *United States v. Akram*, 165 F.3d 452, 456 (6th Cir.1999). *See*

also, *United States v. Graham,* 275 F.3d 490 (6th Cir.2001) (indicating that a magistrate's finding of probable cause will not be set aside, unless it was arbitrary), *cert. denied,* 535 U.S. 1026, 122 S.Ct. 1625, 152 L.Ed.2d 636, 2002 WL 459022 (2002). Where, as in the present case, oral testimony was not presented to the magistrate who issued the search warrant, the existence of probable cause to support that warrant must be ascertained exclusively from the four corners of the affidavit. *See e.g., Whiteley v. Warden,* 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Vigeant,* 176 F.3d 565, 569 (1st Cir.1999); *United States v. Etheridge,* 165 F.3d 655, 656 (8th Cir.1999); *United States v. Weaver,* 99 F.3d 1372, 1377 (6th Cir.1996).

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court modified the exclusionary rule "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S.Ct. 3405. *See also, United States v. Czuprynski,* 46 F.3d 560 (6th Cir.1995) (*en banc* ). The *Leon* Court also held that the good faith exception to the exclusionary rule would not apply under the following circumstances, to wit: 1) when the search warrant was obtained in violation of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); 2) when the issuing magistrate has failed to act in a neutral and detached fashion; 3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and 4) when the warrant is so facially deficient (i.e., it fails to describe the particular place to be searched or the items to be seized) that the executing officers could not have reasonably presumed that it was valid. 468 U.S. at 923, 104 S.Ct. 3405. *See also, Van Shutters,* *supra; United States v. Leake,* 998 F.2d 1359, 1366 (6th Cir.1993).

Herein, the Court will assume for present purposes that McDonough's affidavit failed to establish probable cause to support the issuance of the search warrant for the Express Mail package. Nevertheless, in accordance with *Leon,* the Court concludes that the evidence seized from that package cannot be suppressed.

*First,* the Defendant has not presented evidence that McDonough's affidavit contained a falsehood or omission of the type identified in *Franks v. Delaware, supra.* The Defendant argues that McDonough violated *Franks,* because her affidavit indicated that the return address on the Express Mail package was inaccurate. This Court does not agree with the Defendant. In her affidavit, McDonough indicated that she had called directory assistance which gave her the only telephone number for Creative Marketing in the Cape Coral area. When she called that number, she was told by the manager of Creative Marketing that it was located in Ft. Meyers and that she (the manager) was not aware of an entity called Creative Marketing being located in Cape Coral. Since those statements are uncontradicted, the Court concludes that McDonough's affidavit does not contain misrepresentations.

In *United States v. Atkin,* 107 F.3d 1213 (6th Cir.1997), the Sixth Circuit noted that, "[a]lthough material omissions are not immune from inquiry under *Franks,* we have recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *Id.* at 1216. The *Atkin* court explained that "[t]his is so because an allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that

might, if included, have redounded to defendant's benefit." *Id.* (internal quotation marks and citations omitted). *See also, Graham,* 275 F.3d at 506. During the suppression hearing, McDonough testified that she was aware that the return address listed on the package, 1509 S.E. 10 Place, Cape Coral, Florida, 33990, was a valid delivery address. Information that the return address was valid was not material, since it is uncontradicted that, *at the time she submitted her affidavit to Judge Merz,* all information known to McDonough indicated that Creative Marketing did not operate at that address.

*Second,* Defendant does not suggest that Judge Merz abandoned his judicial role as a detached and neutral magistrate.

*Third,* McDonough's affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923, 104 S.Ct. 3405. The Defendant contends that McDonough submitted nothing more than a bare bones affidavit and that, therefore, it was lacking in all indicia of probable cause. Although the Court agrees with Defendant's legal premise that a bare bones affidavit lacks all indicia of probable cause (*Van Shutters,* 163 F.3d at 337), it cannot agree that McDonough's was of that variety. The Sixth Circuit has indicated that a bare bones affidavit is one which contains nothing more than the affiant's conclusory statement that probable cause to search or to arrest exists. *United States v. Williams,* 224 F.3d 530, 533 (6th Cir.2000), *cert. denied,* 531 U.S. 1095, 121 S.Ct. 821, 148 L.Ed.2d 704 (2001). *See also, Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933) (statement in affidavit that affiant had cause to believe that liquor brought illegally into

the United States was being stored at a particular location did not establish probable cause to search that location). McDonough's affidavit did more than merely set forth her belief in the existence of probable cause to search the package. Therein, she related that, a week earlier, a person with a fictitious return address had sent the Defendant a package containing steroids, a Schedule III controlled substance. McDonough also stated that the Defendant had previously mailed a package containing an analogue substance of GHB, a Schedule I controlled substance.[7] In addition, she set forth the information that Creative Marketing operated from an address in Ft. Meyers, rather than from the address which was on the package.

*Fourth,* the warrant itself was not facially deficient.

In sum, the Court concludes that, assuming for sake of argument that McDonough's affidavit failed to establish probable cause to believe that contraband would be found inside the package, the evidence seized from it cannot be suppressed, in accordance with the good faith exception to the exclusionary rule, established in *Leon.*

Based upon the foregoing, the Court overrules the Defendant's Motion to Suppress Evidence (Doc. # 14).

## II. Request for Discovery (Doc. # 22)

Defendant requests that the Court order the Government to produce ten categories of materials. The Government has not responded to this motion. As a means of analysis, the Court will address those categories in the order in which they appear in Defendant's Request for Discovery.

---

7. Previous violations of a statute can give rise to probable cause to seize a person or to conduct a search. *See Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (holding that probable cause to stop a vehicle was supported by the fact that the defendant had previously been arrested for illegally transporting liquor).

With Item 1, Defendant requests all manner of his statements, including any written or recorded statements made by him, the substance of any statements made by him which the Government intends to offer in evidence at trial, any response by him to an interrogation, his response to any *Miranda* warnings given to him and any other statements that are discoverable under Fed. R. Cr. P. 16(a)(1)(A). Statements of a defendant can be discovered in accordance with Rule 16(a)(1)(A), which provides in pertinent part:

(A) *Statement of Defendant.* Upon request of a defendant the government must disclose to the defendant and make available for inspection, copying, or photographing: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged. The government must also disclose to the defendant the substance of any other relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a government agent if the government intends to use that statement at trial.

As can be seen from the foregoing, Rule 16(a)(1)(A) requires the Government to disclose Defendant's relevant written or recorded statements; the portion of the written record which contains the substance of his relevant oral statements,

made in response to an interrogation by an individual known by him to be a Government agent; Defendant's recorded Grand Jury testimony concerning the offense charged; and the substance of any other relevant oral statement, made in response to an interrogation by an individual known by him to be a Government agent, which the Government intends to use at trial. With Item 1, Defendant has requested all of those categories of statements. Since the Government has not indicated whether it possesses such statements and, if so, whether it has disclosed them, the Court sustains Defendant's Request for Discovery (Doc. # 22), to the extent that, with Item 1, he seeks to discover statements to which he is entitled by Rule 16(a)(1)(A). The Court, however, overrules Defendant's Request for Discovery, to the extent that, with Item 1, he seeks disclosure of statements to which he is not entitled by Rule 16(a)(1)(A).

■ With Item 2, Defendant requests that the Government disclose all arrest reports and notes which relate to the circumstances surrounding his arrest. Defendant also requests that the Court direct the Government's agents to preserve their rough notes, even if such notes are not discoverable. Arrest reports are not discoverable. *See* Fed.R.Crim.P. 16(a)(2) (providing that internal Government reports and memoranda are not subject to discovery). The Court will, however, direct the Government to inform its agents to retain their rough notes. Accordingly, the Court sustains in part and overrules in part Defendant's Request for Discovery (Doc. # 22), as it relates to Item 2.

With Item 3, Defendant requests that the Government provide reports of all tests and examinations conducted upon the evidence in this case. Such reports are discoverable pursuant to Rule 16(a)(1)(D). Since the Government has not indicated

whether it possesses such reports and, if so, whether they have been disclosed, the Court sustains Defendant's Request for Discovery (Doc. # 22), as it relates to Item 3.

With Item 4, Defendant requests that the Government provide him a copy of his criminal record. Defendant is entitled to discover his criminal record. *See* Rule 16(a)(1)(B). Since the Government has not indicated whether it has disclosed Defendant's criminal record to him, the Court sustains Defendant's Request for Discovery (Doc. # 22), as it relates to Item 4.

■ With Item 5, Defendant requests that the Government produce evidence seized as a result of any search, with or without a search warrant. It is apparent that the Government has disclosed evidence which it has obtained as a result of searches, given the Defendant's request to suppress evidence. Nevertheless, in the absence of an express statement from the Government that it has produced all such evidence which is discoverable, the Court sustains Defendant's Request for Discovery (Doc. # 22), as it relates to Item 5.

With Item 6, Defendant requests the opportunity to inspect and to copy documents and tangible objects. The Defendant is entitled to inspect and to copy documents and tangible items which are in the possession, custody or control of the Government and either are material to the preparation of his defense, the Government intends to use them in its case-in-chief at trial or were obtained from or belong to the Defendant. *See* Rule 16(a)(1)(C). Since the Government has not

indicated whether it has provided such documents and tangible things to the Defendant, the Court sustains Defendant's Request for Discovery (Doc. # 22), as it relates to Item 6.

With Item 7, Defendant requests that the Government disclose the identity, qualifications and testimony of each individual the Government intends to call as an expert witness at trial. Under Rule 16(a)(1)(E), the Defendant is entitled to discover this information. Since the Government has not indicated whether it has disclosed such information, the Court sustains Defendant's Request for Discovery (Doc. # 22), as it relates to Item 7.

With Item 8, Defendant requests that the Government disclose 7 sub-categories of information. As a means of analysis, the Court will address the sub-categories in the order in which they appear in Defendant's Request for Discovery, discussing similar sub-categories together.

■ With Item 8A–E, Defendant requests that the Court order the Government to disclose all manner of evidence which is either exculpatory or could be utilized to impeach the Government's witnesses.[8] These requests are based upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), under which the Government is obligated to disclose evidence to a criminal defendant which is both favorable to the defendant and material either to guilt or to punishment. *Kyles v. Whitley*, 514 U.S. 419, 432, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). That obligation extends to impeachment evi-

---

**8.** In particular, Defendant requests evidence that any Government witnesses are biased or prejudiced against him or have a motive to lie (Item 8A); evidence that any such witnesses have engaged in criminal activity or have made statements favorable to him (Item 8B); evidence that any Government witnesses are currently under criminal investigation (Item 8C); evidence relating a medical or psychiatric condition that could affect the ability of any of the Government's witnesses to perceive, to remember, to communicate or to tell the truth (Item 8D); and disclosure of the names of individuals who have made statements favorable to the Defendant (Item 8E).

dence, as well as to exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). *See also, United States v. Mullins,* 22 F.3d 1365, 1372 (6th Cir.) ("Clearly, *Brady* recognizes no distinction between evidence which serves to impeach a government witness' credibility and evidence which is directly exculpatory of the defendant."). *Brady* did not, however, create a constitutional right to discovery in a criminal prosecution. *See e.g., Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one. . . ."); *United States v. Bencs,* 28 F.3d 555, 560 (6th Cir.1994) (same), *cert. denied,* 513 U.S. 1117, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995). Indeed, the Sixth Circuit has held that the Government is typically the sole judge of whether evidence in its possession is subject to disclosure under *Brady. United States v. Driscoll,* 970 F.2d 1472, 1482 (6th Cir.1992), *cert. denied,* 506 U.S. 1083, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993); *United States v. Presser,* 844 F.2d 1275, 1281 (6th Cir.1988). Given that *Brady* does not provide a right of discovery, this Court overrules Defendant's Request for Discovery (Doc. # 22), as it relates to Items 8A E. This ruling should not, however, be construed as relieving the Government of its obligations under *Brady.*

■ With Item 8F, Defendant does not ask for the disclosure of any particular information; rather, he requests that the Government examine the personnel files of all its testifying witnesses, including law enforcement officers, to ascertain whether those files contain any evidence of perjurious conduct, dishonesty or any other material that is relevant to impeachment. The Court will decline to order the Government to conduct the requested examination of personnel files. Although the Ninth Circuit has held that the Government has an obligation to examine the personnel files of testifying law enforcement officials in order to comply with its obligations under *Brady, see United States v. Henthorn,* 931 F.2d 29 (9th Cir.1991),[9] the Sixth Circuit implicitly rejected *Henthorn* in *Driscoll, supra.* Therein, the Sixth Circuit concluded that, under *Brady,* the Government was not obligated to produce personnel files of its testifying agents, based solely upon the defendant's speculation that those files might contain impeaching information. In support of that conclusion, the Sixth Circuit relied, *inter alia,* upon *United States v. Andrus,* 775 F.2d 825 (7th Cir.1985), wherein the Seventh Circuit concluded that the defendant's speculation that personnel files might contain impeaching information did not impose upon the District Court the obligation of conducting an *in camera* review of those files, since *Brady* was not a discovery device. The dissenting opinion in *Driscoll* argued that the Sixth Circuit should decline to follow the Seventh Circuit's decision in *Andrus* and should adopt the approach of the Ninth Circuit in *Henthorn,* a case which was described by the dissent as being "on all fours." 970 F.2d at 1489. The fact that this Court will not require the Government to conduct a review of the personnel files of its testifying witnesses does not, however, relieve it of its obligation under *Brady* of disclosing impeachment material of which it becomes aware, including any such material contained in the personnel files.

■ With Item 8G, Defendant requests pretrial disclosure of material covered by the Jencks Act, 18 U.S.C. § 3500. Accord-

---

**9.** In *United States v. Herring,* 83 F.3d 1120 (9th Cir.1996), the Ninth Circuit held that the District Court was without authority to order the Assistant United States Attorney prosecuting a particular case to conduct that examination.

ing to the Defendant, early disclosure of such material could allow the trial of this case to proceed without need for delays to afford his counsel the opportunity to review and analyze that material. Although the Court agrees with Defendant that the early production of Jencks material might allow the trial to proceed more expeditiously,[10] the Jencks Act expressly provides that the Government is not obligated to disclose information until after a witness has testified. 18 U.S.C. § 3500(a). Moreover, the Sixth Circuit has repeatedly held that said statute must be followed and that, therefore, the Government cannot be compelled to disclose Jencks material before trial. *See e.g., Presser*, 844 F.2d at 1283 ("The clear and consistent rule of this circuit is that the intent of Congress expressed in the [Jencks] Act must be adhered to and, thus, the Government may not be compelled to disclose Jencks Act material before trial."). Accordingly, the Court overrules Defendant's Request for Discovery (Doc. # 22), as it relates to Item 8G.

 With Item 9, the Defendant requests that the Court direct the Government to preserve all video tapes, dispatch tapes and any physical evidence, including all alleged chemical substances, liquid and solid, that were obtained by purchase or by seizure. The Court sustains the Defendant Request for Discovery (Doc. # 22), as it relates to Item 9.

With Item 10, Defendant requests copies of all agents' notes, memoranda and other documents relating to all purchases made by any Government agent from TLC or the Internet web site, www.anabolikegde.com. The Court will decline to order the Government to produce such documents. *See* Fed.R.Crim.P. 16(a)(2). Ac-

cordingly, the Court overrules the Defendant's Request for Discovery (Doc. # 22), as it relates to Item 10.

---

**10.** It is this Court's experience that the United States Attorney discloses Jencks material the day before a witness will be called to testify. Following that normal practice in this case will allow the trial to proceed without the need for frequent interruptions to allow defense counsel to prepare for cross examination.