**UNITED STATES of America,
Plaintiff,**

v.

**Brian KERSEY, Defendant.**

No. 3:05cr093.

United States District Court,
S.D. Ohio,
Western Division.

Feb. 27, 2006.

Don Allen Little, Frederick Walker Dressel, Ruffolo, Stone, Dressel & Lipowicz, Dayton, OH, for Defendant.

Mona Guerrier, United States Attorney's Office, Dayton, OH, for Plaintiff.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION TO COMPEL (DOC. # 12); DECISION AND ENTRY OVERRULING DEFENDANT'S FIRST MOTION TO SUPPRESS EVIDENCE (DOC. # 13); DECISION AND ENTRY OVERRULING, AS MOOT, DEFENDANT'S SECOND MOTION TO SUPPRESS EVIDENCE (DOC. # 14); DECISION AND ENTRY OVERRULING DEFENDANT'S AMENDED MOTION TO SUPPRESS EVIDENCE (DOC. # 16); DECISION AND ENTRY OVERRULING, AS MOOT, DEFENDANT'S SECOND MOTION TO COMPEL DISCOVERY (DOC. # 19); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION TO REOPEN SUPPRESSION HEARING (DOC. # 24); CONFERENCE CALL SET

RICE, District Judge.

Defendant Brian Kersey ("Defendant" or "Kersey") is charged in the Indictment (Doc. # 7) with one count of manufacturing and possessing with intent to distribute less than 50 marijuana plants, in violation of 21 U.S.C. § 841(a), and one count of profiting from the use of the premises at 3401 Winterwood Drive, for the purpose of manufacturing, distributing and using marijuana plants, in violation of 21 U.S.C. § 856(a). Much of the evidence upon which this prosecution is based was obtained by the Government when a search warrant was executed on March 19, 2004, at Defendant's residence located at 3401 Winterwood Drive, Huber Heights, Ohio, and the statements Kersey made to police officers on that day, after the search had been conducted. As a consequence, Defendant has filed his First Motion to Suppress Evidence (Doc. # 13), with which he seeks the suppression of his statements, and an Amended Motion to Suppress Evidence (Doc. # 16), with which he seeks the suppression of the evidence seized when his residence was searched. He has also filed a Motion to Reopen Suppression

Hearing (Doc. # 24) and a Motion to Compel (Doc. # 12).[1] As a means of analysis, the Court will initially rule upon the Defendant's Motion to Compel (Doc. # 12), following which it will turn to the three motions related to his requests to suppress evidence.

## I. Defendant's Motion to Compel (Doc. # 12)

With this motion, Defendant requests that the Court order the Government to furnish him "all evidence that is favorable to him and relevant to either his guilt and/or [sic] punishment[,] including, but not limited to, all tape recordings taken of Defendant during the investigation of this case." Doc. # 12 at 1. The Government has not responded to this motion. Turning initially to the specific aspect of this motion (i.e., the tape recordings), Rule 16(a)(1)(B) of the Federal Rules of Criminal Procedure requires that the Government provide to a criminal defendant copies of his recorded statements. Accordingly, the Court sustains the Defendant's Motion to Compel (Doc. # 12), as it relates to his specific request that the Government be required to provide him copies of tape recordings of him.

██ With this motion, however, the Defendant has also requested that the Court order the Government to provide any evidence that is favorable to him and relevant either to his guilt or punishment. This branch of Kersey's motion is predicated on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny, under which the Government is obli-

gated to disclose information to a criminal defendant which is both favorable to him and material either to guilt or to punishment. *Kyles v. Whitley,* 514 U.S. 419, 432, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). That obligation extends to impeachment evidence, as well as to exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). *See also, United States v. Mullins,* 22 F.3d 1365, 1372 (6th Cir.) ("Clearly, *Brady* recognizes no distinction between evidence which serves to impeach a government witness' credibility and evidence which is directly exculpatory of the defendant."). *Brady* did not, however, create a constitutional right to discovery in a criminal prosecution. *See e. g., Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one. . . ."); *United States v. Bencs,* 28 F.3d 555, 560 (6th Cir.1994) (same), *cert. denied,* 513 U.S. 1117, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995). Indeed, the Sixth Circuit has held that the Government is typically the sole judge of whether evidence in its possession is subject to disclosure under *Brady. United States v. Driscoll,* 970 F.2d 1472, 1482 (6th Cir.1992), *cert. denied,* 506 U.S. 1083, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993); *United States v. Presser,* 844 F.2d 1275, 1281 (6th Cir.1988). Since *Brady* did not create a rule of discovery in criminal cases, the Court overrules this branch of the Defendant's Motion to Compel (Doc. # 12).

---

1. Two other motions are pending, which the Court will rule upon in brief fashion. *First,* Defendant has filed his Second Motion to Suppress Evidence (Doc. # 14), with which he seeks the suppression of the evidence seized from his residence. That motion is moot, since Defendant has requested the same relief with his Amended Motion to Suppress Evidence (Doc. # 16). Accordingly, the Court overrules Kersey's Second Motion to Suppress Evidence (Doc. # 14), as moot.

*Second,* with his Motion to Compel Discovery (Doc. # 19), the Defendant has requested that the Court order the Government to produce an unredacted copy of the summary of electric usage for 3400 Winterwood Drive. Since Defendant has attached an unredacted copy of that summary to his Motion to Reopen Suppression Hearing (Doc. # 24) and to his post-hearing memorandum (Doc. # 25), the Court overrules Kersey's Motion to Compel Discovery (Doc. # 19), as moot.

Accordingly, the Court sustains in part and overrules in part Defendant's Motion to Compel (Doc. # 12). The Government is ordered to provide the requested tape recordings on an immediate basis.

*II. Defendant's First Motion to Suppress Evidence (Doc. # 13), Amended Motion to Suppress Evidence (Doc. # 16) and Motion to Reopen Suppression Hearing (Doc. # 24)*

On March 18, 2004, Kevin Phillips ("Phillips"), a police officer employed by the City of Dayton Police Department who was assigned to a Drug Enforcement Administration ("DEA") task force, executed an affidavit with which he was able to obtain a warrant from United States Magistrate Judge Michael Merz, authorizing law enforcement officers to search Kersey's residence located at 3401 Winterwood Drive in Huber Heights, Ohio.[2] That search warrant was executed the following day, March 19, 2004. During the search of 3401 Winterwood Drive, officers discovered, *inter alia,* a marijuana growing operation located in the basement of that residence. That operation included a number of growing marijuana plants.

Although the Defendant was not at home when the search of his residence began, he returned home approximately 30 to 45 minutes after officers had arrived and begun to search his residence. Before Kersey had returned to his residence, officers had discovered the marijuana growing operation in his basement. Officers met the Defendant in the driveway of 3401 Winterwood Drive and escorted him into the living room. In that room, Kersey was met by Phillips and Agent Jorge Delrio ("Delrio"), who wanted to question him about the marijuana growing operation that had been in the basement. However, before the officers questioned the Defendant, Phillips read him the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In particular, Phillips read each of the rights encompassed by *Miranda,* individually, and waited until Kersey acknowledged that he understood that particular right, before he (Phillips) moved to the next right. Kersey indicated that he understood his rights and agreed to speak with the officers. The Defendant told Phillips and Delrio that the marijuana in his basement belonged to him, that, with the help of John Copp ("Copp"), he had put the marijuana growing operation in his basement in August of 2003, and that he had harvested marijuana from that operation on three occasions separate from the marijuana that was then growing.[3]

As is indicated, the Defendant has moved to suppress his statements with his First Motion to Suppress Evidence (Doc. # 13), and the evidence seized from his residence with his Amended Motion to Suppress Evidence (Doc. # 16). On October 28, 2005, this Court conducted an oral and evidentiary hearing on those motions. Thereafter, the Defendant filed a motion, requesting that the Court reopen the suppression hearing, in order to permit the Court to consider an unredacted copy of the summary of electric usage for 3400 Winterwood Drive and to permit further questioning as to who redacted that summary. *See* Doc. # 24. Nevertheless, the

---

**2.** In addition, with that affidavit, Phillips was also able to obtain a search warrant from Judge Merz, authorizing officers to search John Copp's residence at 2728 Kennedy Drive in Dayton.

**3.** The officers' conversation with Kersey on March 19th lasted about 10 to 15 minutes. Phillips asked him questions concerning his family and the like, as well as inquiring about the marijuana growing operation that had been discovered in the basement.

parties have filed their post-hearing memoranda. *See* Docs. # # 25, 26 and 27. As a means of analysis, the Court will initially rule on Defendant's First Motion to Suppress Evidence (Doc. # 13), since the resolution of that motion would not be impacted by a decision to reopen the suppression hearing. Thereafter, the Court will turn to Defendant's Motion to Reopen Suppression Hearing (Doc. # 24), following which it will rule upon his Amended Motion to Suppress Evidence (Doc. # 16).

*A. Defendant's First Motion to Suppress Evidence (Doc. # 13)*

Kersey argues that the Court must suppress his statements to officers, because he made them before he had been given the warnings required by *Miranda*. Therein, the Supreme Court held that a defendant may waive those rights, provided the waiver is made voluntarily and knowingly. 384 U.S. at 475, 86 S.Ct. 1602. The Government bears the burden of proving by a preponderance of the evidence that a defendant has so waived his *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). The Defendant has not argued that he did not waive the rights conveyed by the *Miranda* warnings. Such an argument would have been unavailing. In *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), the Supreme Court noted that the question of whether a defendant has waived his *Miranda* rights has two distinct components:

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a

full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). See also *North Carolina v. Butler*, 441 U.S. 369, 374–375, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).

*Id.* at 421, 106 S.Ct. 1135. *See also, Seymour v. Walker*, 224 F.3d 542, 553–54 (6th Cir.2000); *Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir.2000).

██ Herein, the Court concludes that the Government has met its burden of proving by the preponderance of the evidence that Kersey voluntarily and knowingly waived his rights under *Miranda*.[4] There is not even an assertion, let alone evidence, that Defendant's decision to talk to Phillips was the product of intimidation, coercion, or deception, rather than being his free and deliberate choice. In addition, given that Phillips read each of the rights encompassed by the *Miranda* warnings, separately, to Kersey, pausing to ensure that he understood the particular right, the Defendant's waiver of his rights was knowing.

Based upon the foregoing, the Court overrules Defendant's First Motion to Suppress Evidence (Doc. # 13).

*B. Defendant's Motion to Reopen Suppression Hearing (Doc. # 24)*

In ¶ 12 of the section of the affidavit setting forth the facts with which he was able to obtain the search warrant for 3401 Winterwood Drive, Phillips stated that,

---

**4.** Indeed, the Defendant has not addressed his First Motion to Suppress Evidence (Doc. # 13) in his post-hearing memoranda.

based upon his prior training and experience, he knows that indoor marijuana growing operations consume unusually high amounts of electricity, in order to operate the requisite high intensity lamps and fans.[5] Therein, he also indicated that he had issued a subpoena to Dayton Power and Light ("DP & L") in order to obtain subscriber information and information concerning the consumption of electricity for 3401 Winterwood Drive. In ¶ 13 of that document, Phillips states that the information he received from DP & L indicated that Kersey was the subscriber for both 3401 and 3400 Winterwood Drive and that the consumption of electricity for 3401 Winterwood Drive was twice that for the residence at 3400 Winterwood.

With this motion, Kersey requests that the Court reopen the suppression hearing to permit him to introduce an unredacted copy of the summary of electric usage for 3400 Winterwood Drive. During the suppression hearing, Defendant introduced, as Exhibit C, a copy of that summary with the name of the subscriber redacted. Attached to this motion is a copy of the summary of that usage, without the name of subscriber redacted. Contrary to the statement in ¶ 13 of Phillips' affidavit, the subscriber at 3400 Winterwood Drive was not Kersey. With this motion, the Defendant also requests that the Court reopen the suppression hearing in order to permit him to explore the reasons for the redaction of the name of the subscriber at 3400 Winterwood Drive.

Since the Government has not challenged the authenticity of the copy of the summary of electric usage which Defendant has submitted with this motion,[6] the Court will reopen the suppression hearing to permit the introduction into evidence of the copy of the summary of electric usage for 3400 Winterwood Drive which the Defendant has attached to his motion. The Court will, however, deny his request to reopen the suppression hearing in order to allow him to explore the reasons for the redaction of the subscriber's name from that summary. During the oral and evidentiary hearing conducted on October 28, 2005, Defendant's counsel questioned Phillips at length about that redaction. That officer steadfastly testified that he could not remember whether he had redacted the subscriber's name from the summary of usage for 3400 Winterwood Drive. Kersey has not explained what additional testimony concerning the redaction he would seek to elicit (or what its relevance would be), if the suppression hearing were to be reopened.

Accordingly, the Court sustains in part and overrules in part the Defendant's Motion to Reopen Suppression Hearing (Doc. # 24). The exhibit Defendant has attached to this motion is hereby admitted into the evidence of the suppression hearing, marked as Defendant's Exhibit G. However, the evidentiary hearing, itself, will not be reconvened.

## B. Defendant's Amended Motion to Suppress Evidence (Doc. # 16)

In his post-hearing memorandum, Kersey argues that the Court should suppress

---

**5.** Phillips' affidavit has an introductory section, in which he sets information relating to his background, and a section which sets forth the facts that purport to support probable cause. The paragraphs in the two sections have not been numbered consecutively. Nevertheless, since it is not necessary for the Court to refer to any of the material set forth in the introductory section of that affidavit, all references herein are to paragraphs in the section setting forth the facts on which the police officer relied.

**6.** That summary is identical to Exhibit C, which was introduced during the suppression hearing, except that the subscriber's name has not been redacted from the summary.

the evidence that was seized when the search warrant was executed at his residence at 3401 Winterwood Drive, both because Phillips violated the rule established in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and because his affidavit failed to establish probable cause to believe that contraband or evidence of a crime would be found there.[7] As a means of analysis, the Court will initially address Kersey's *Franks* argument, following which it will turn to the question of whether Phillips' affidavit established probable cause.

 In *Franks*, the Supreme Court fully explained its holding at the conclusion of its opinion:

> In sum, and to repeat with some embellishment what we stated at the beginning of this opinion: There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only

that of the affiant, not of any nongovernmental informant. *Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.* On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

438 U.S. at 171–72, 98 S.Ct. 2674 (emphasis added and footnote omitted). The Sixth Circuit has recently reiterated that *Franks* applies to an omission from an affidavit, as well as to a misstatement in one. *United States v. Abboud*, 438 F.3d 554 (6th Cir.2006). *Accord Hale v. Kart*, 396 F.3d 721, 726 n. 4 (6th Cir.2005). If statements have been deliberately or recklessly omitted from the affidavit, the reviewing court must add the omitted information and then determine *de novo* whether the affidavit supports probable cause. *United States v. Ippolito*, 774 F.2d 1482, 1486 n. 1 (9th Cir.1985); *United States v. House*, 604 F.2d 1135, 1141 (8th Cir.1979), *cert. denied*, 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980).

In his post-hearing memoranda, Kersey argues that Phillips violated *Franks* by including three false statements in his affidavit and by omitting one statement from it. As a means of analysis, the Court will initially address the three alleged misstatements in the order in which they appear in the affidavit, following which it will turn to the alleged omission.

---

**7.** In his Amended Motion to Suppress Evidence, the Defendant also argued that the search warrant for his residence violated the particularity requirement of the Fourth Amendment. *See* Doc. # 16 at 2. Since he has failed to raise that argument in his post-hearing memoranda, the Court concludes that it has been waived.

*First,* in ¶ 1 of his affidavit, Phillips states that a confidential source ("CS") provided law enforcement officers information regarding two indoor marijuana operations, one of which was located at Copp's residence on Kennedy Drive and the other at Kersey's residence at 3401 Winterwood Drive. In that paragraph, Phillips also stated that the CS had indicated that Copp and Kersey "have purchased marijuana together in the past." Government Exhibit A at p. 2, ¶ 1. According to Defendant, the CS, Larry Baumaster ("Baumaster"), has never seen Copp and Kersey purchase marijuana together, nor has he ever told officers that he observed Copp and Kersey engage in such activity together. During the October 28th oral and evidentiary hearing, Baumaster testified that, although he has previously witnessed Copp and Kersey purchase marijuana separately, he has never seen them purchase that substance *together.* Baumaster also testified that he did not tell police officers that he has seen Copp and Kersey purchase marijuana together. Phillips, in contrast, testified that Baumaster had provided such information. The Court credits the testimony from Baumaster, who provided exceptionally accurate information to law enforcement officials, and, therefore, finds that the addition of the word "together" to ¶ 2 of Phillips' affidavit constituted a falsehood. The Court cannot, however, find that Phillips acted with a deliberate or reckless disregard for the truth when he erroneously added the word "together." Before preparing his affidavit, Phillips spoke directly to Baumaster on one occasion; however, he obtained most of the information concerning the confidential source from Detective Jeffrey Osburn of the Xenia Police Department. Under those circumstances, Phillips' error concerning information supplied by Baumaster constituted negligence, at most.

Therefore, the Court concludes that the falsehood in ¶ 1 of Phillips' affidavit did not violate *Franks.*

■ *Second,* in ¶ 2 of his affidavit, Phillips stated:

2. The CS has provided information in the past, which has been verified through independent investigation and found to be accurate and truthful.

During the evidentiary hearing, Phillips explained that he was informing the magistrate with this paragraph that Baumaster had provided accurate information during the investigation of Copp and Kersey, before he (Phillips) executed his affidavit, which had been verified through an independent investigation. Both Phillips and Baumaster testified that the latter had not provided information to law enforcement officers before the investigation of Copp and Kersey.

With ¶ 2, Phillips was attempting to establish the bona fides or reliability of the confidential informant who had provided much of the information Phillips had set forth in his affidavit. The unmistakable conclusion to be drawn from ¶ 2 is that Baumaster had provided information to officers in *earlier* investigations that had been verified by independent investigation. That, of course, is false. Moreover, as Phillips well knew that Baumaster had not provided information in earlier investigations, the Court finds that the misstatement was made, at a minimum, with a reckless disregard for the truth. Therefore, the Court concludes that Phillips violated *Franks* by including ¶ 2 in his affidavit and will disregard the information therein when it decides whether that affidavit established probable cause.

*Third,* in ¶ 13 of his affidavit, which is discussed above, Phillips states that Kersey was the subscriber of electric services

at 3400 Winterwood Drive.[8] The exhibit attached to Defendant's Motion to Reopen Suppression Hearing (Doc. #24), which herein the Court has permitted to be introduced into evidence, demonstrates that Phillips' statement that Kersey was the subscriber at that address was false. The Court cannot, however, find that Phillips acted with a deliberate or reckless disregard for the truth, by including such false information in his affidavit. The purpose of Phillips' affidavit was to establish probable cause to believe that a marijuana growing operation was located at 3401 Winterwood Drive, and, thus, to obtain a warrant to search that location. Phillips sought to support that proposition with ¶¶ 12 and 13, by stating that locations which contain marijuana growing operations use unusually high amounts of electricity and that 3401 Winterwood Drive used twice as much electricity as 3400 Winterwood. It is difficult to comprehend how including the statement that the Defendant was the subscriber for 3400 Winterwood Drive, a location for which a search warrant was *not* being sought, would make it more likely that a marijuana operation would be found at 3401 Winterwood. In the absence of any reason to misstate deliberately or recklessly that the Defendant was the subscriber of electric services for 3400 Winterwood Drive, the Court cannot find that Phillips acted with such a mental state.

Accordingly, the Court concludes that Phillips did not violate *Franks* by erroneously stating in ¶ 13 of his affidavit that Kersey was the subscriber of electric services at 3400 Winterwood Drive.

*Fourth*, as part of his investigation, Phillips subpoenaed summaries of the consumption of electricity for 3400, 3401 and 3407 Winterwood Drive. From those rec-

ords, he learned that about the same amount of electricity was consumed at 3401 and 3407 Winterwood Drive, while each of those two locations used twice as much electricity as was consumed at 3400 Winterwood. In order to corroborate the information supplied by Baumaster and to support the existence of probable cause to believe that a marijuana growing operation would be found at 3401 Winterwood Drive, Phillips indicated in ¶¶ 12 and 13 of his affidavit that locations which contain marijuana growing operations use unusually high amounts of electricity and that 3401 Winterwood Drive used twice as much electricity as 3400 Winterwood. Phillips neglected to mention therein, however, that for all practical purposes the same amount of electricity was consumed at 3401 as at 3407 Winterwood Drive. Defendant argues that this omission violated *Franks*, and the Court agrees.

When questioned during the evidentiary hearing about the reasons why he had neglected to include information concerning 3407 Winterwood Drive in his affidavit, Phillips indicated that he did not believe that information concerning electric consumption at 3407 Winterwood Drive had a bearing on the particular facts confronting him. He did not, however, explain why 3407 Winterwood Drive had no such bearing, nor did he identify any concrete fact which made that location irrelevant. Notably, Phillips did not explain why he had subpoenaed the records of electric consumption at 3407 Winterwood Drive, if those figures would have no bearing on the facts confronting him. As a consequence, the Court is forced to find that Phillips decided to exclude information concerning consumption of electricity at 3407 Winterwood Drive from his affidavit, because in-

---

8. Of course, Defendant was the subscriber of such services for 3401 Winterwood Drive, where the search warrant was executed.

cluding such information would have detracted from the overall purpose of that affidavit, to wit: to convince Judge Merz that there was probable cause to believe that a marijuana growing operation would be found at 3401 Winterwood Drive. If Phillips had indicated in his affidavit that essentially the same amount of electricity was consumed at 3401 and 3407 Winterwood Drive, although each location consumed twice the electricity that was used at 3400 Winterwood Drive, it is at least as likely that Judge Merz would have concluded that an abnormally low amount of electricity was being used at the latter location, rather than that an abnormally high amount was being used at the other two locations, because marijuana growing operations were located in one of them.

Accordingly, the Court finds that Phillips deliberately omitted electricity consumption information concerning 3407 Winterwood Drive in order to deliberately deceive Judge Merz into believing that an abnormally high amount of electricity was being consumed at 3401 Winterwood Drive because of the marijuana growing operation located therein. When it rules on the question of whether Phillips' affidavit established probable cause to search Defendant's residence, it will include information that about the same amount of electricity was consumed at 3407 Winterwood Drive as at the residence at 3401 Winterwood.

■ Having addressed the question of whether there was a violation of *Franks,* the Court turns to the question of whether Phillips' affidavit established probable cause to believe that a marijuana growing operation was located in 3401 Winterwood Drive. In accordance with the foregoing discussion, the Court will ignore the information contained in ¶ 2 of that affidavit (that the CS had provided information in the past which had been verified through an independent investigation and found to be accurate and truthful) and include information pertaining to the consumption of electricity at 3407 Winterwood Drive. As a means of analysis, the Court will initially set forth the standards it must apply whenever it rules upon Defendant's request to suppress evidence, because the affidavit executed in support of a search warrant allegedly failed to establish probable cause.

■ In *United States v. Smith,* 182 F.3d 473 (6th Cir.1999), the Sixth Circuit reviewed the principles which a court must apply when determining whether a warrant is supported by probable cause:

> The Fourth Amendment, which states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. CONST. amend. IV, requires that probable cause be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out federal crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In order for a magistrate to be able to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. *Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A warrant must be upheld as long as the magistrate had a "substantial basis for

... conclud[ing] that a search would uncover evidence of wrongdoing...." *Id.* at 236, 103 S.Ct. 2317. *See also United States v. Finch,* 998 F.2d 349, 352 (6th Cir.1993).

*Id.* at 476–77. In *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court stressed that the existence of probable cause must be determined from the totality of the circumstances. In *Smith,* the Sixth Circuit elaborated upon *Gates:*

> As the Supreme Court indicated in *Gates,* although "veracity," "reliability," and "basis of knowledge" are highly relevant in assessing the value of an informant's tip, these elements should not be understood as "entirely separate and independent requirements to be rigidly exacted in every case." 462 U.S. at 230, 103 S.Ct. 2317. Instead, they should be understood as "closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether an informant's tip establishes probable cause. *Id.* Therefore, under a "totality of the circumstances" approach, a deficiency in one of these areas "may be compensated for, in determining the overall reliability of [an informant's] tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233, 103 S.Ct. 2317. The Court in *Gates* concluded that "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct. 2317. The court must ensure that the magistrate was informed of some of the underlying circumstances from which the informant concluded evidence of a crime is where he claimed it would be found, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was reliable. *Aguilar*

[*v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)].

182 F.3d at 477–78. *See also Gates,* 462 U.S. at 238, 103 S.Ct. 2317 (noting that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place"). *See also, United States v. Laughton,* 409 F.3d 744, 747 (6th Cir.2005). When determining whether an affidavit established the existence of probable cause to believe that contraband or evidence of a crime would be found at a particular location, a court must examine the totality of those circumstances in a "realistic and commonsense fashion." *United States v. Van Shutters,* 163 F.3d 331, 336 (6th Cir.1998), *cert. denied,* 526 U.S. 1077, 119 S.Ct. 1480, 143 L.Ed.2d 563 (1999). Of course, this Court also must give great deference to the determination of probable cause made by Judge Merz who issued the search warrant. *United States v. Allen,* 211 F.3d 970 (6th Cir.) (*en banc*), *cert. denied,* 531 U.S. 907, 121 S.Ct. 251, 148 L.Ed.2d 181 (2000); *United States v. Akram,* 165 F.3d 452, 456 (6th Cir.1999). *See also, United States v. Graham,* 275 F.3d 490, 501 (6th Cir.2001) (indicating that a magistrate's finding of probable cause will not be set aside, unless it was arbitrarily made).

■ Where, as in the present case, oral testimony was not presented to the magistrate who issued the warrant, the existence of probable cause to support that warrant must be ascertained exclusively from the four corners of the affidavit. *See e. g., Whiteley v. Warden,* 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Vigeant,* 176 F.3d 565, 569

(1st Cir.1999); *United States v. Etheridge,* 165 F.3d 655, 656 (8th Cir.1999); *United States v. Weaver,* 99 F.3d 1372, 1377 (6th Cir.1996).

In his affidavit, Phillips stated, *inter alia,* that Baumaster had informed law enforcement officials that Copp had an elaborate marijuana growing operation in the upstairs of his residence at 2728 Kennedy Drive and that Kersey had a similar operation in his residence at 3401 Winterwood Drive.[9] Baumaster described the operation at Defendant's residence as being located in the basement, behind a false wall, and indicated that 50 to 60 marijuana plants were being grown therein. Phillips also stated in his affidavit that, less than two weeks earlier, two detectives employed by the Xenia Police Department had visited Defendant's residence to conduct a follow-up investigation on an unrelated manner. Inside that residence, the detectives had noticed a strong odor that was consistent with growing marijuana. In addition, Phillips indicated in his affidavit that he had been able to corroborate some of the information that Baumaster had provided. For instance, through his independent investigation, the officer corroborated that Copp lived at 2728 Kennedy Drive and that Kersey resided at 3401 Winterwood Drive. More significantly, officers were able to corroborate to a degree Baumaster's information that Copp had a marijuana growing operation in his residence on Kennedy Drive, given that Baumaster, while under police surveillance, had met Copp there and had obtained a marijuana bud from him which he (Baumaster) gave to police officers.

Applying the applicable legal standards to the information contained in Phillips' affidavit, this Court concludes that the affidavit established probable cause to believe that a marijuana growing operation was located at 3401 Winterwood Drive. As an initial matter, courts, including the Sixth Circuit, have held that the odor or aroma of marijuana in a residence is sufficient in and of itself to establish probable cause to believe that marijuana is located in that structure. *See e. g., United States v. Wimbush,* 337 F.3d 947, 950 (7th Cir.2003); *United States v. Elkins,* 300 F.3d 638, 659 (6th Cir.2002); *United States v. Taylor,* 162 F.3d 12, 21 (1st Cir.1998); *United States v. Gordon,* 712 F.2d 110, 113–14 (5th Cir.1983); *United States v. Barnard,* 553 F.2d 389, 392 (5th Cir.1977). Moreover, Phillips' affidavit also included information provided by Baumaster that the Defendant was operating a marijuana growing operation in his residence. That information included the type of detail which one would expect a person who had actually seen such an operation would provide. Baumaster told the officers that the operation was concealed in the basement behind a false wall and that 50 to 60 marijuana plants were growing at that location. In addition, the information provided by Baumaster was corroborated in the manner described above, as well as by the fact that the Xenia Police Department detectives had smelled the strong odor of growing marijuana at 3401 Winterwood Drive.

Based upon the foregoing, the Court concludes that the totality of the circumstances set forth in Phillips' affidavit provided reasonable grounds for believing that a marijuana growing operation was located in Kersey's residence at 3401 Winterwood Drive. Accordingly, the Court overrules Defendant's Amended Motion to Suppress Evidence (Doc. # 16).

---

9. Throughout his affidavit, Phillips referred to Baumaster as "CS." For sake of clarity, the Court uses his name herein.

Counsel will note that the Court has scheduled a telephone conference call on Monday, March 6, 2006, at 8:30 a.m., for the purpose of selecting a new trial date for this prosecution.